**SIGNED THIS: April 14, 2010**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CASEY A. SIMPSON, | ) | No. 08-81991 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| FARMERS STATE BANK OF WESTERN ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 08-8119 |
| | ) | |
| CASEY A. SIMPSON, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

This matter is before the Court on the motion of the Plaintiff, Farmers State Bank of Western Illinois (FSB), for summary judgment on its complaint against the Defendant, Casey A. Simpson (DEBTOR). Count I of the two count complaint seeks to deny the DEBTOR his discharge under Section 727(a)(3) because of an alleged failure to retain

business records. Count II seeks a judgment of nondischargeability under Section 523(a)(6) for willful and malicious injury on account of the DEBTOR'S conversion of FSB's collateral.

Count I is readily disposed of. In its motion, FSB asserts that despite a blanket request for all of the records related to the DEBTOR'S business, JR Motor Sports, Inc., the only documents produced were his 2007 income tax return, and a few older records provided by his accountant.

In his Response, the DEBTOR asserts that numerous additional documents have recently been provided or tendered for inspection to FSB, including a flash drive purportedly containing most of the business records. In its Reply, FSB admits receiving additional documents on February 12, 2010, consisting of four boxes and being advised that two filing cabinets of business records are also available. The documents on the flash drive have not yet been accessed. Because of the lateness of the production, FSB requests that the DEBTOR be prohibited from using the recently produced documents.

Because the trial process is, at its heart, a search for the truth, courts are loath to exclude otherwise admissible evidence because of untimely production, absent actual fraud, dishonesty or bad faith by the producing party or actual prejudice to the requesting party. No excuse has yet been offered by the DEBTOR. The question of whether his belated production, which occurred after the motion was filed, is justifiable is a question of fact that is not properly considered in the context of the pending motion for summary judgment.

Summary judgment on Count I may not be considered until it is determined whether the late-produced documents will be admitted. If FSB chooses to seek exclusion

of the documents, or other relief, it should file a motion for sanctions under F.R.B.P. 7037.[1] The motion as to Count I will be denied without prejudice.

Turning to Count II, FSB alleges that it had a security interest in JR Motor Sports' equipment and inventory, that the DEBTOR sold various tools and items of equipment to third parties, and sold the inventory, and failed to turn over the proceeds to FSB. The DEBTOR says he used the proceeds for payroll, for taxes and to pay certain unsecured creditors. FSB contends that the DEBTOR'S actions amount to a willful and malicious conversion of its collateral.

A debtor's conversion of a secured creditor's collateral often gives rise to nondischargeability under Section 523(a)(6). This Court has considered the issue on several occasions. *In re Buckley,* 2009 WL 400628 (Bankr.C.D.Ill. 2009); *In re Vogel,* 2005 WL 3506443 (Bankr.C.D.Ill. 2005); *In re Lock,* 2002 WL 32001417 (Bankr.C.D.Ill. 2002).

Willfulness is established by proof that the debtor intended to improperly dispose of the creditor's collateral and used the proceeds for purposes other than payment of the secured debt. *In re Russell,* 262 B.R. 449, 455 (Bankr.N.D.Ind. 2001). Maliciousness is established where the debtor either intended to harm the secured creditor or was aware that the creditor would be harmed by his actions. *In re Jercich,* 238 F.3d 1202, 1209 (9th Cir. 2001). These elements are readily established through proof that a debtor knew of the creditor's security interest and nevertheless sold collateral and failed to pay the proceeds to the creditor.

---

[1] Of course, exclusion of the business records would prevent the DEBTOR from proving a defense to Count I, that he did in fact maintain and preserve adequate business records. That result, anomalous to an extreme, is a strong reason not to use exclusion as the appropriate sanctions for the DEBTOR'S dilatory failure to produce the records earlier.

Where the collateral is inventory, however, the issue can be grayer. Since it is the sale of inventory that generates the cash flow needed to fund operations, the sale of inventory in the regular course of business of a going concern, and the use of the proceeds to pay ordinary business debts, is not usually an act of conversion against a lender who has an inventory lien. It is often recognized that the regular course of dealing between the parties constitutes the lender's implied consent to the sale of inventory. *In re Eberle,* 61 B.R. 638 (Bankr.D.Minn. 1985). If the business is liquidating, however, the picture changes, and the debtor may have a duty to relinquish inventory sale proceeds to the secured creditor, less, perhaps, reasonable expenses and costs of services related to the liquidation process. Often, the debtor and the lender have discussed the liquidation and have agreed to its terms. This is a fact-specific inquiry that FSB does not address in its motion.

The DEBTOR, in his Response, seems to concede some of the acts of conversion of equipment and tools, but alleges, without evidentiary support, that he informed FSB of his intent to liquidate and that FSB acquiesced in the liquidation. The DEBTOR also claims that the converted property was worth less than claimed by FSB and that FSB has failed to prove its damages.

Where a willful and malicious conversion of collateral is proved, the amount of the nondischargeable damages is the lesser of (1) the value of the converted collateral at the time of conversion, and (2) the balance due the creditor on the underlying debt. *In re Afonica,* 174 B.R. 242, 247 (Bankr.N.D.Ohio 1994); *In re Mills,* 111 B.R. 186, 207 (Bankr.N.D.Ind. 1988). The appropriate measure of damages is the value of the property

that the creditor could have realized upon repossession at the date of conversion. *In re Cox*, 243 B.R. 713, 720 (Bankr.N.D.Ill. 2000). The value may be established by evidence of the actual price obtained by the debtor at the time of sale. *In re Wooten*, 423 B.R. 108 (Bankr.E.D.Va. 2010). However, the creditor may believe the value is greater than the actual sale price and is not bound thereby.

In the case at bar, FSB introduces scant evidence of the liquidation value of most of the tools and items of equipment sold by the DEBTOR.[2] No appraisal was made. Only a few of the items have the actual sale price disclosed and it is not clear whether FSB asserts the price as its intended evidence of value or is merely reporting what the DEBTOR testified he received.

The motion asserts several different aggregate values for the inventory. But nothing in the record enables the Court to determine the amount that FSB would have received had it repossessed and sold the inventory in April or May, 2006. The DEBTOR testified in his deposition that the book value, at retail, of the inventory on April 11, 2006, was $65,465.00. Retail value is not, however, the applicable standard. So the value of the collateral is an unresolved question of fact as are the issues relating to whether the sale of the inventory amounted to a willful and malicious conversion of collateral.

For the foregoing reasons, FSB's motion for summary judgment must be denied. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[2] At trial, it may be acceptable for the Court to draw inferences as to value from the evidence in the record. At this point, however, all inferences have to be drawn in favor of the DEBTOR as the non-moving party.